# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 23-1719V

| | |
|---|---|
| DAVID MOLTER, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: October 7, 2024 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Emilie Williams, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On October 3, 2023, David Molter filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.* (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as the result of an influenza ("flu") vaccine received on January 12, 2022. Petition (ECF No. 1). For the reasons discussed below, I find that the at-issue vaccine was most likely administered in Petitioner's right arm, as alleged, and he is otherwise entitled to compensation for a Table SIRVA.

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

### I. Procedural History

One month after initiating the claim, Petitioner filed the requisite medical records and a Statement of Completion. ECF Nos. 6, 8. In February 2024, the case was assigned to the Office of Special Masters' Special Processing Unit (OSM's adjudicatory system for expedited resolution). ECF No. 9. In June 2024, Respondent completed his review of the medical records, and advised that he would be opposing compensation. ECF No. 14.

Respondent argued in his Rule 4(c) Report that the contemporaneous record establishes that the at-issue vaccine was administered in Petitioner's *left* deltoid, which is incompatible with Petitioner's claim for a *right-sided* SIRVA. ECF No. 16 at 5. Respondent thus requested that I resolve this fact issue. Status Report, ECF No. 17 at 1. Petitioner was granted a final opportunity to ensure that the evidentiary record was complete, ECF No. 18, and thereafter on September 6, 2024, he filed an affidavit from his wife as Exhibit 9, ECF No. 19, followed by a supplemental Statement of Completion. ECF No. 20. The matter is ripe for adjudication.

### II. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III. Evidence

While I have reviewed all of the filings submitted by both parties to date, the below summary is particularly focused on the sole, disputed factual issue: the site of vaccine administration.

- Petitioner was 42 years old and employed as a police officer at the time of vaccination. He had no prior shoulder pain or dysfunction, or other relevant medical history. *See generally* Ex. 2 at 87 – 208.

- On January 12, 2022, at a CVS pharmacy location in Ohio, Petitioner received the at-issue vaccination. On the vaccine administration record, all fields are typed – including: "Site Left Deltoid," and the administrator's name and title. Ex. 1 at 1.

    While the form reflects Petitioner's answers to certain screening questions, it was not signed by Petitioner. *Id.* at 1 – 2.

- Forty-two (42) days post-vaccination, at a February 23, 2022, annual examination, a primary care physician ("PCP") recorded Petitioner's report of: "No new complaints, other than sore right shoulder since getting a flu vax. States is [sic, it?] was given somewhat high in the deltoid. Dec. ROM [decreased range of motion] since that time." Ex. 2 at 83. A physical examination of the right upper arm found tenderness and decreased ROM. *Id.* at 86. The PCP recorded: "[Petitioner] [w]ill call if shoulder not improving. Sounds like issues since the vaccine." *Id.* at 87. He referred Petitioner to physical therapy ("PT"). *id.*

- At the March 8, 2022, PT initial evaluation, Petitioner reported that he "had no problems until he received his flu shot in his R arm. The next day pain began gradually and increased." Ex. 3 at 22. The therapist recorded the date of injury/onset as 01/12/2022, and summarized that Petitioner had "R shoulder pain following injection of flu vaccine..." *Id.* at 22, 24. He attended eight further PT sessions through March 29, 2022 (which do not shed additional light on the situs issue). Ex. 3 at 12 – 21; Ex. 7 at 3.[2]

- Petitioner again reported that his right shoulder pain and reduced ROM was caused by a right-sided vaccine administration, during follow-up appointments with his PCP on April 12, and June 14, 2022. This injury persisted despite home exercises and Voltaren topical gel. An x-r,ay of the shoulder was unremarkable. . *See generally* Ex. 2 at 29 – 32, 8 – 14 (ordered chronologically). On June 14th, he was prescribed meloxicam (Mobic) for the pain and referred to an orthopedic surgeon. *Id.* at 11.

- At the July 26, 2022, orthopedics initial evaluation, Petitioner reported that his January 2022 vaccine had been administered in his right shoulder and possibly "too high." Ex. 6 at 69. Petitioner reported that he developed "extreme pain" in the shoulder the following day. *Id.* On exam, the right shoulder had decreased ROM, pain, and a positive Hawkin's impingement sign. *Id.* at 70. The orthopedic surgeon suspected bursitis, tendinitis, or rotator cuff dysfunction. *Id.*

- The orthopedic surgeon ordered an MRI of Petitioner's right shoulder, which took place on August 12, 2022. Ex. 6 at 59. The impressions were: "1. Partial-thickness, bursal-sided tear of supraspinatus without tendon retraction or muscle atrophy. 2.

---

[2] Petitioner self-discharged from PT on May 18, 2022, in favor of pursuing an orthopedics evaluation. Ex. 3 at 4.

4

- Mild partial tearing cranial subscapularis fibers. Infraspinatus tendinosis with associated degenerative changes of the greater tuberosity." *Id.* at 60.

- At a September 19, 2022, follow-up appointment on Petitioner's continued right shoulder pain, the orthopedic surgeon reviewed the MRI; assessed a partial-thickness rotator cuff tear; administered a subacromial steroid injection; and instructed Petitioner on a home exercise program. Ex. 6 at 41 – 42. Two months later, Petitioner reported that the steroid injection temporarily relieved his pain, which had been recently increasing with no new cause. *Id.* at 26. He deferred the option of surgical intervention. *Id.* at 27. At the next and last orthopedics appointment in February 2023, Petitioner was confirmed to have an ongoing right shoulder injury, but it was "tolera[ble]" and did not prevent him from working as a police officer, or from lifting weights. *Id.* at 11 – 12.

- In his November 2023 affidavit, Petitioner states that the CVS record incorrectly suggests a left-sided vaccine administration. Ex. 8 at ¶ 2. Petitioner notes that he is left-handed, and therefore insisted on receiving the vaccine in his non-dominant *right* arm. Ex. 8 at ¶ 2; *accord* Ex. 6 at 69 (orthopedics record, stating that Petitioner is left-hand dominant). Petitioner also describes developing severe pain in his right shoulder the following evening, and seeking medical attention when the pain did not improve over time. Ex. 8 at ¶ 4.

- In September 2024, Petitioner's wife recalls that he complained of pain in his right arm beginning one day after the vaccination, and that she observed the band-aid "high up on his right shoulder near the acromion process of the arm." Ex. 9 at ¶¶ 2, 3. As a registered nurse with over 20 years' experience – including administering vaccines – she believed that Petitioner's vaccine's location was inappropriate, and "increas[ed] the likelihood of hitting bone or other tissue rather than muscle." *Id.* at ¶¶ 1, 4.

### IV. Analysis

The only disputed issue is the site of vaccine administration. Respondent contends that there is not preponderant evidence in Petitioner's favor, because the most contemporaneous record indicates the left deltoid. Rule 4(c) Report at 5. Respondent argues that Vaccine Act Section 13(a)(1) prevents me from finding in Petitioner's favor based on his claims alone. *Id.*

My experience resolving SIRVA cases has taught me that it is not unusual for information regarding the vaccine administration site to be incorrect – especially information contained in *computerized* records, which may feature a 'dropdown' menu

which may not be updated each time a separate vaccine is administered.[3] Thus, although such records are unquestionably the first-generated documents bearing on issues pertaining to situs, they are not per se reliable simply *because* they come first – and in fact the nature of their creation provides some basis for not accepting them at face value.[4] This case involves just such a computerized record. The lack of even manual *signatures* from the administrator and Petitioner, *see* Ex. 1 at 1 – 2, supports a conclusion that this record was pre-printed and likely never reviewed for its accuracy.

In addition, the subsequent treatment records reflect that beginning just six weeks post-vaccination, Petitioner reported his recollection of a right-sided vaccination - to at least *three* different medical providers. *See, e.g.*, Ex. 2 at 83; Ex. 3 at 22; Ex. 6 at 69. The Federal Circuit has counseled that patient histories "in general, warrant consideration as trustworthy evidence… [as they] contain information supplied to… health professionals to facilitate diagnosis and treatment." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Moreover, Petitioner's wife shares his recollection, and was particularly concerned about his complaints given her professional medical training. Ex. 8. Finally, Petitioner has credibly explained that he would have insisted on receiving the vaccine in his non-dominant right arm. Overall, there is preponderant evidence to support that allegation.

## Conclusion and Scheduling Order

Respondent has stated no further objections to compensation, and I find Petitioner has otherwise satisfied all criteria for a Table SIRVA injury following receipt of the January 12, 2022, vaccine. There is no evidence of prior right shoulder pain, inflammation, or dysfunction or an alternative cause for Petitioner's symptoms. His pain began within 48 hours post-vaccination, his pain and reduced range of motion were limited to the right, vaccinated shoulder. 42 C.F.R. §§ 100.3(a), (c)(10).

---

[3] *See, e.g.*, *Mezzacapo v. Sec'y of Health Servs.*, No. 18-1977, 2021 WL 1940435, at *2 (Fed. Cl. Spec. Mstr. Apr. 19, 2021); *Desai v. Sec'y of Health & Human Servs.*, No 14-0811V, 2020 WL 4919777, at *14 (Fed. Cl. Spec. Mstr. July 30, 2020); *Rodgers v. Sec'y of Health & Human Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020); *Stoliker v. Sec'y of Health & Human Servs.*, No. 17-0990V, 2018 WL 6718629, at *4 (Fed. Cl. Spec. Mstr. Nov. 9, 2018).

[4] In contrast, information which requires *specific action* on the part of the vaccine administrator (often at the very time of administration), such as a handwritten notation on a printed form, generally warrants more significant weight *See, e.g.*, *Schmidt v. Sec'y of Health & Hum. Servs.*, No. 17-1530V, 2021 WL 5226494, at *8 (Fed. Cl. Spec. Mstr. Oct. 7, 2021); *Marion v. Sec'y of Health & Hum. Servs.*, No. 19-0495V, 2020 WL 7054414 at *8 (Fed. Cl. Spec. Mstr. Oct. 27, 2020).

That injury and/or its residual effects lasted for over six months. Section 11(c)(1)(D)(i). The case concerns a seasonal flu vaccine – which is covered under the Program, Section 11(c)(1)(A), and it was administered within the United States or its territories, Section 11(c)(1)(B)(i). And there is no evidence that Petitioner has collected a civil award for his injury. Section 11(c)(1)(E). Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act. For the foregoing reasons, **I find that Petitioner has established entitlement and is thus entitled to compensation.**

The case is now formally in the damages phase. The parties are encouraged to pursue informal resolution of an appropriate damages award. If the parties determine that informal resolution is not possible, they should be prepared to promptly brief the appropriate award of damages.

**By no later than Wednesday, November 06, 2024.**, Petitioner shall file a **Status Report updating on the parties' efforts towards informally resolving damages.** The status report shall specifically state the date by which Petitioner provided, or intends to provide, a demand for damages to Respondent.[5]

**IT IS SO ORDERED.**

                                                         **s/Brian H. Corcoran**
                                                         Brian H. Corcoran
                                                         Chief Special Master

---

[5] In June 2024, Petitioner filed a status report, ECF No. 15, in which he states that the case does not involve a Medicaid lien, worker's compensation, or lost wages. Petitioner also confirmed that his condition was unchanged from what is described in his earlier affidavit at Ex. 8, ECF No. 6-8.